ANDREA T. MARTINEZ, United States Attorney (#9313)
CY H. CASTLE, Assistant United States Attorney (#4808)
MARK E. WOOLF, Assistant United States Attorney (WA Bar #39399)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 | Salt Lake City, Utah 84111
Tel: (801) 524-5682 | Fax: (801) 325-3399 mark.woolf@usdoj.gov |
cy.castle@usdoj.gov

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Real Property Located at 2448 West 6830 South, West Jordan, UT 84084, and Real Property Located at 3179 Paintedhills Avenue, Las Vegas, NV, 89120,<br><br>Defendants *in Rem*. | Case No.<br><br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***<br><br><br><br>Judge |

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure,

the United States of America states the following *in rem* action for forfeiture.

## **NATURE OF THE ACTION**

1.      This is a judicial forfeiture action under 18 U.S.C. §§ 981(a)(l)(C) and

981(a)(1)(A), seeking forfeiture of the Defendant Property more particularly

described at Paragraph 9 herein.

2.      The Defendant Property is subject to forfeiture under 18 U.S.C. §

1

981(a)(l)(C), which provides that "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. §] 1956(c)(7))" is forfeitable to the United States. Section 1956(c)(7) further defines "specified unlawful activity" to include "any act or activity constituting an offense listed in [18 U.S.C. §] 1961(1)". *See* 18 U.S.C. § 1956(c)(7)(A).

3.      Any offense under 18 U.S.C. § 1014 (relating to Loan Application Fraud) expressly constitutes a forfeitable offense under 18 U.S.C. § 981(a)(1)(C). An offense under 18 U.S.C. § 1014 (relating to Loan Application Fraud) also constitutes a "specified unlawful activity" under 18 U.S.C. § 1956(c)(7)(D). So too, any offense under 18 U.S.C. § 1343 (relating to wire fraud) constitutes a "specified unlawful activity." *See* 18 U.S.C. § 1961(1). Because the Defendant Property was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1014 and 1343, it is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

4.      The Defendant Property is further forfeitable pursuant to 18 U.S.C. § 981(a)(1)(A), which provides that "any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956 [or] 1957…or any property traceable to such property," is subject to forfeiture to the United States. Because the Defendant Property was "involved in" or "traceable to" a transaction or attempted transaction that violated 18 U.S.C. § 1957, it is forfeitable to the United

States pursuant to 18 U.S.C. § 981(a)(1)(A).

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this is a civil action commenced by the United States. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1355(a) because this is an "action or proceeding for . . . forfeiture[.]"

6.      This Court has *in rem* jurisdiction pursuant to 28 U.S.C. § 1355(b) and (d) because the acts or omissions giving rise to the forfeiture occurred in this District.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1355(b)(1)(A) because the "acts or omissions giving rise to the forfeiture" occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1395(a) because the forfeiture accrued in this District and/or the Defendant Property may be found in this district.

## PARTIES

8.      Plaintiff is the United States of America.

9.      Defendants *in rem* (referred to as "Defendant Property" throughout this Verified Complaint) are more particularly described as:

   a) Real property located at 2448 West 6830 South, West Jordan, UT 84084 (referred to individually as the "West Jordan Property"); and

   b) Real property located at 3179 Paintedhills Avenue, Las Vegas, NV 89120 (referred to individually as the "Paintedhills Property").

## FACTS SUPPORTING FORFEITURE

### The Economic Injury Disaster Relief Program

10.     The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The SBA helps to establish small business and assists in the economic recovery of communities after disasters.

11.     As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans often have government-backed guarantees.

12.     The Economic Injury Disaster Loan ("EIDL") program is administered by the SBA and provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

13.     The Coronavirus Aid, Relief and Economic Security Act ("CARES Act") is a federal law enacted in March 2020 designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to advance up to $10,000 to small businesses within three days of applying for an EIDL.

14. To obtain EIDL funds, a qualifying business must apply to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL funds for COVID-19 relief, the 12-month period was that preceding January 31, 2020.

15. Applicants must certify, under penalty of perjury, that all the information in an application is true and correct.

16. Applicants seeking EIDL funds submit applications directly to the SBA. If approved, the loan amount is determined based, in part, on the information supplied by the applicant about employment, revenue, and cost of goods. EIDL funds are issued directly by SBA.

17. Applicants who receive EIDL funds must use those funds for "working capital" and other normal operating expenses such as, without limitation, payroll, healthcare benefits, rent, utilities, fixed debt payments, repairs, or replacing inventory. Generally, and without limitation, EIDL funds cannot be used for purchasing capital assets, new construction, vehicles, cash dividends or bonuses, disbursement to owners not tied to performance, or business expansion.

18. If an applicant also obtains a loan under the Paycheck Protection Program ("PPP"), the EIDL funds cannot be used for the same purposes as the PPP funds.

19.     EIDL Loan Agreements require that borrowers not "make any advance, directly, or indirectly, by way of loan, gift, bonus, or otherwise, to any owner or partner or any of its employees, or to any company directly or indirectly controlling or affiliated with or controlled by" the borrower or any other company.

20.     Among the provisions in the EIDL Loan Authorization and Agreement are the following:

    a) Page 3: USE OF LOAN PROCEEDS "Borrower will use all the proceeds of this loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020, and continuing thereafter; and

    b) Page 6: CIVIL AND CRIMINAL PENALTIES: "Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator in the amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. § 636(b). In addition, any false statement or misrepresentation to the SBA may result in criminal, civil, or administrative sanctions including, but not limited to 1) fines, imprisonment, or both, under 15 U.S.C. § 645, 18 U.S.C. § 1014, 18 U.S.C. § 1040, 18 U.S.C. § 3571, and any other applicable laws; 20 treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3802; and (4) suspension and/or debarment from all Federal procurement and non-procurement transaction. Statutory fines may increase if amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015."

21.     Each owner, member, partner, or shareholder of twenty percent or more of the applicant business receiving EIDL funds must be a U.S. citizen, non-citizen national, or qualified alien with a valid Social Security Number. Lawful presence in the United States is not sufficient to establish the individual is a qualified alien.

22.     Each owner, member, partner, or shareholder of twenty percent or more of the applicant business receiving EIDL funds may be required to provide SBA financial statements to support an application, and for each EIDL loan in excess of $200,000 each must provide a personal guaranty.

## Investigation of Giuseppe Mirenda

23.     In or about April 2020, law enforcement received information that Giuseppe Mirenda ("Mirenda") and his business partners were using CARES Act funds illegally for their own personal use to purchase real property, expensive vehicles, and to support a lavish lifestyle.

24.     Upon receipt of the information, law enforcement initiated an investigation into Mirenda and his businesses, learning that he owned multiple restaurant businesses jointly with his father, Francesco Mirenda, and his uncle, Angelo D'Allesandro.

25.     Law enforcement received further information that, shortly after the COVID-19 pandemic began, Mirenda purchased multiple high-end vehicles, one of which he drove, and the other two allegedly possessed by his business partners.

26.     Law enforcement was further informed by a complainant that Mirenda had obtained approximately $1.5 million in CARES Act funds and used those funds to purchase his personal residence in West Jordan, real property in Las Vegas, and a red Ferrari.

**Material Misrepresentations and Omissions on the EIDL Applications**

27.   Based upon the totality of information it had been provided, law enforcement began a financial investigation into Mirenda, learning that between March 20, 2020, and June 20, 2020, Mirenda submitted eight EIDL applications for financial relief for eight different businesses.

28.   Mirenda digitally signed each of the applications, agreeing "to be bound by the terms and conditions herein during the term of this Loan, and further agree[ing] that no provision stated herein will be waived without prior written consent of SBA."

29.   Mirenda signed each of the applications under penalty of perjury, certifying that he was authorized to apply for and obtain a disaster loan on behalf of each applicant borrower in connection with the COVID-19 emergency.

30.   On each application, Mirenda listed himself as the sole owner of the applicant business, even though he only held a one-third interest with two business partners, his father, Francesco Mirenda, and his uncle, Angelo D'Allesandro, who each held equal one-third interests in the applicant businesses.

31.   Neither Francesco Mirenda nor Angelo D'Allesandro, despite owning more than twenty percent of each applicant business, signed or submitted financial information in connection with the EIDL relief applications, and neither provided a

personal guaranty for the EIDL loans.

32.    On each application, Mirenda also answered "yes" to the question of whether he was a U.S. citizen. Mirenda is not a U.S. citizen, but rather a lawful permanent resident. Neither of Mirenda's business partners is a U.S. citizen, and neither is listed on any EIDL application despite meeting the threshold ownership requirements under the EIDL program.

33.    In each EIDL application, Mirenda certified the loan proceeds would only be used for "working capital" (that is, rent, utilities, wages, etc.), when, in fact, as detailed below, he knowingly and illegally used EIDL funds to purchase the Defendant Property and other assets for himself and his business partners.

**Phase I of Layering/Money Laundering of EIDL Funds**

***a.  Sicilia Mia I***

34.    On March 20, 2020, Mirenda submitted an electronic EIDL application to the SBA for the business entity Sicilia Mia I, located in Farmington, Utah. Prior to securing any EIDL funds for Sicilia Mia I, Mirenda opened a new checking account at Wells Fargo Bank ending in 8903 ("WFB account ending in 8903"). Mirenda opened WFB account ending in 8903 notwithstanding that an account in the name Sicilia Mia I already existed.

35.    Based on the information provided by Mirenda, on or about April 17, 2020, the SBA wired $10,000 advance EIDL funds to Sicilia Mia 1 WFB account

ending in 8903.

36.     Thereafter, on or about April 24, 2020, SBA wired an additional $499,900 in EIDL funds to the Sicilia Mia 1 WFB account ending in 8903. That same day, $500,000 was wired from Sicilia Mia 1 WFB account ending in 8903 into Sicilia Restaurant Management Wells Fargo Bank account ending in 6755 ("WFB Sicilia Mia Management Account ending in 6755").

### b.  Sicilia Mia

37.     On or about March 30, 2020, Mirenda submitted an electronic EIDL application to the SBA for the business entity Sicilia Mia, located in Holladay, Utah. Prior to securing any EIDL funds for Sicilia Mia, Mirenda opened a new checking account at Wells Fargo Bank ending in 9034 in the name of Sicilia Mia ("WFB account ending in 9034"). Mirenda opened WFB account ending in 9034 notwithstanding that an account in the name Sicilia Mia already existed.

38.     On or about April 24, 2020, the SBA wired $499,900 in EIDL funds into the Sicilia Mia WFB account ending in 9034 in the amount of $499,900. That same day, $500,000 was wired from the Sicilia Mia WFB account ending in 9034 into the WFB Sicilia Mia Management Account ending in 6755.

### c.  Antica Sicilia

39.     On or about March 30, 2020, Mirenda submitted an electronic EIDL application to the SBA for the business entity Antica Sicilia, located in Millcreek,

Utah. Prior to securing any EIDL funds, Mirenda opened a new checking account ending in 9026 at Wells Fargo Bank in the name of Antica Sicilia ("WFB account ending in 9026"). Mirenda opened WFB account ending in 9026 notwithstanding that an account in the name Antica Sicilia already existed.

40.     On or about April 17, 2020, the SBA wired a $10,000 EIDL advance to Antica Sicilia WFB account ending in 9026.

41.     On or about May 6, 2020, the SBA wired $379,000 in EIDL funds into Antica Sicilia WFB account ending in 9026. That same day, $379,000 was wired from Antica Sicilia WFB account ending in 9026 into the WFB Sicilia Mia Management Account ending in 6755.

### d. Sicilia Mia II

42.     On or about March 30, 2020, Mirenda submitted an electronic EIDL application to the SBA for the business entity Sicilia Mia II, located in Cottonwood Heights, Utah. Prior to securing any EIDL funds, Mirenda opened a new checking account ending in 9018 at Wells Fargo Bank in the name of Sicilia Mia II ("WFB account ending in 9018"). Mirenda opened WFB account ending in 9018 notwithstanding that an account in the name Sicilia Mia II already existed.

43.     On or about June 16, 2020, the SBA wired $149,900 in EIDL funds to Sicilia Mia II WFB account ending in 9018. That same day, $149,500 was wired from Sicilia Mia II WFB account ending in 9018 into WFB Sicilia Mia Management

Account ending in 6755.

### e. *Sicilia Mia Restaurant Management*

44.    On or about June 16, 2020, Mirenda submitted an electronic EIDL application to the SBA in the name of Sicilia Mia Restaurant Management, located in Salt Lake City, Utah. Prior to securing any EIDL funds, Mirenda opened a new checking account ending in 3527 at Wells Fargo Bank in the name of Sicilia Mia Restaurant Management ("WFB account ending in 3527"). Mirenda opened WFB account ending in 3527 notwithstanding that an account in the name Sicilia Mia Restaurant Management already existed.

45.    On or about June 19, 2020, the SBA wired $10,000 EIDL advance funds to Sicilia Mia Restaurant Management WFB account ending in 3527.

46.    On or about June 22, 2020, the SBA wired $149,900 in EIDL funds into the Sicilia Mia Restaurant Management WFB account ending in 3527. That same day, $150,000 was wired from Sicilia Mia Restaurant management WFB account ending in 3527 into the WFB Sicilia Mia Management Account ending in 6755.

### f. *Bella Sicilia*

47.    On or about June 20, 2020, Mirenda submitted an electronic EIDL application to the SBA for the business entity Bella Sicilia, located in Salt Lake City, Utah. Prior to securing any EIDL funds, Mirenda opened a new checking account

ending in 8994 at Wells Fargo Bank in the name of Bella Sicilia ("WFB account ending in 8994"). Mirenda opend WFB account ending in 8994 notwithstanding that an account in the name Bella Sicilia already existed.

48.     On or about June 26, 2020, the SBA wired $149,900 in EIDL funds into the Bella Sicilia WFB account ending in 8994. That same day, $150,000 was wired from Bella Sicilia WFB account ending in 8994 into the WFB Sicilia Mia Management Account ending in 6755.

49.     On or about July 7, 2020, the SBA made an additional EIDL deposit of $10,000 into Bella Sicilia account ending in 8994, and, on or about July 9, 2020, an additional $10,000 was wired from Bella Sicilia account ending in 8994 into the WFB Sicilia Mia Management Account ending in 6755.

## Phase II of Layering/Money Laundering of EIDL Funds

50.     For the period of on or about April 24, 2020 through July 9, 2020, a total of $1,838,500 in EIDL funds received into separate business accounts for each EIDL applicant was transferred into the WFB Sicilia Mia Management Account ending in 6755.

51.     For the period of on or about April 24, 2020 through October 8, 2020, the Sicilia Mia Management Account ending in 6755 received only $18,525.44 in non-EIDL deposits, meaning more than ninety-nine percent of the funds received in Sicilia Mia Management Account ending in 6755 for that period were EIDL funds.

52.    On October 8, 2020, Mirenda initiated a $610,000 wire transfer from Sicilia Mia Management Account ending in 6755 into Wells Fargo account ending in 4529, which is a personal savings account Mirenda jointly hold with his business partner and father, Franceso Mirenda.

53.    Prior to the October 8, 2020, transfer of $610,000 from Sicilia Mia Management Account ending in 6755 into Mirenda's Wells Fargo saving account ending in 4529, the balance in the account was $2,090.37, meaning that, after the transfer, more than ninety-nine percent of the account balance in Mirenda's Wells Fargo savings account ending in 4529 was comprised of EIDL funds.

## Purchase of the Defendant Properties

### a.  West Jordan Property

54.    On or about August 8, 2020, Mirenda went under contract on the purchase of the West Jordan Property, which is more fully described in Paragraph 9 of this Complaint.

55.    The closing date for the West Jordan Property was October 8, 2020, and on that date Mirenda transferred $610,204.85 from his Wells Fargo savings account ending in 4529 to the title company for purchase of the West Jordan Property. The funds transferred from Mirenda's Wells Fargo savings account ending in 4529 were comprised of over ninety-nine percent EIDL funds that had been transferred by Mirenda from the Sicilia Mia Management Account ending in 6755. The EIDL funds

comprised over ninety-two percent of the total purchase price for the West Jordan Property.

56.     Mirenda knowingly transferred EIDL funds from Sicilia Mia Management Account ending in 6755 to his Wells Fargo savings account ending in 4529, and Mirenda knowingly transferred those same EIDL funds from his personal Wells Fargo savings account ending in 4529 to the title company to complete the purchase of the West Jordan Property, which he has used for his personal residence.

### b. Paintedhills Property

57.     Subsequently, on July 19, 2021, Mirenda entered into a Residential Purchase Agreement for $505,000 on the Paintedhills Property, which is more particularly described at Paragraph 9 of this Complaint.

58.     As part of the purchase, Mirenda agreed to pay a $10,000 earnest money payment within two days of signing, and on or about July 23, 2021, the earnest money payment of $10,000 was wired from Sicilia Mia Management Account ending in 6755 to the title company. Mirenda made a second wire in the amount of $508,346.46 from the Sicilia Mia Management Account ending in 6755 on August 6, 2021, the date of closing, to complete the purchase of the Paintedhills Property. Thus, the entire purchase of the Paintedhills Property was funded from the Sicilia Mia Management Account ending in 6755.

59.     In conjunction with the purchase of the Paintedhils Property, law

enforcement forensically reviewed Sicilia Mia Management Account ending in 6755 and determined that there was a total of $2,100,242.88 in total deposits from April 22, 2020, the date the account was opened, through August 6, 2021, the date of the final wire for purchase of the Paintedhills Property. Law enforcement further determined during that same time period of April 22, 2020 through August 6, 2021, EIDL funds accounted for $1,838,500 of the total deposits in the Sicilia Mia Restaurant Management account ending in 6755. Based on a percentage analysis, approximately $456,144.88, or eighty-eight percent, of the total purchase price for the Paintedhills Property was comprised of EIDL funds.

### CLAIMS 1-6
18 U.S.C. § 981(a)(l)(C)
(Loan Application Fraud)

60.    The United States incorporates paragraphs 1-59 as though fully set forth herein.

61.    Title 18, United States Code, Section 981(a)(l)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . 1014 of this title or any offense constituting 'specified unlawful activity (as defined in [18 U.S.C. §] 1956(c)(7)" is forfeitable to the United States. "Specified unlawful activity" is further defined at 18 U.S.C. § 1956(c)(7)(D) to include "an offense under section … 1014 (relating to fraudulent loan or credit applications)" *See* 18 U.S.C. § 1956(c)(7)(D).

62.     Title 18, United States Code, Section 1014, in relevant part, precludes "knowingly make[ing] any false statement or report… for the purpose of influencing in any way the action of…the Small Business Administration in connection with any provision of that Act… upon any application, advance, [or] loan[.]"

63.     Mirenda knowingly made false statements to the SBA for the purpose of inducing SBA to disburse EIDL funds to Mirenda's applicant businesses on each of the applications submitted by Mirenda on behalf of the applicant businesses identified within this Complaint at Paragraphs 34-49. To wit:

1.  Mirenda falsely certified on each application that he was the one-hundred percent owner of each applicant business, and he deliberately omitted material information of his business partners who each holds interests in the applicant businesses of more than twenty percent.

2.  Mirenda falsely certified on each application identified within this Complaint (see ¶¶ 31-46) that he was a United States citizen, and he deliberately omitted material information regarding his co-owners citizenship status.

64.     As a result of the false information provided by Mirenda, the SBA provided the EIDL funds and advances identified in Paragraphs 34-49 herein. The EIDL loans are summarized in the chart below:

| Loan Name | EIDL Loan # | Applicant | Loan Amount | Amt Disbursed | Disbursement Date |
|---|---|---|---|---|---|
| Sicilia Mia 1 | 34436972-01 | Giuseppe Mirenda | $500,000.00 | $499,900.00 | 4/23/2020 |
| Sicilia Mia | 34439272-09 | Giuseppe Mirenda | $500,000.00 | $499,900.00 | 4/23/2020 |
| Antica Sicilia | 18374274-01 | Giuseppe Mirenda | $380,000.00 | $379,900.00 | 5/5/2020 |
| Sicilia Mia 2 | 2953379-10 | Giuseppe Mirenda | $150,000.00 | $149,900.00 | 6/13/2020 |

| Sicilia Restaurant Management | 88400979-02 | Giuseppe Mirenda | $150,000.00 | $149,900.00 | 6/19/2020 |
| Bella Sicilia | 31965680-10 | Giuseppe Mirenda | $150,000.00 | $149,900.00 | 6/24/2020 |

65.     In addition to the loans identified in the immediately preceding Paragraph, Mirenda obtained EIDL advances of $10,000 for each loan.

66.     Therefore, the Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property constituting, or derived from, proceeds of violations of section 1014.

### CLAIMS 7-12
18 U.S.C. § 981(a)(l)(C)
(Wire Fraud)

67.     The United States incorporates paragraphs 1-66 as though fully set forth herein.

68.     Title 18, United States Code, Section 981(a)(l)(C) provides that "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C. §] 1956(c)(7)" is forfeitable to the United States. "Specified unlawful activity" is defined at 18 U.S.C. § 1956(c)(7), *inter alia*, as "any act or activity constituting an offense listed in [18 U.S.C. §] 1961(1)." *See* 18 U.S.C. § 1956(c)(7)(A). Wire fraud in violation of 18 U.S.C. § 1343 is a listed offense under section 1961(1) and, therefore, a specified unlawful activity for purposes of forfeiture under 18 U.S.C. §

981(a)(1)(C).

69.   Title 18, United States Codes, Section 1343, in relevant part, provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be guilty of a crime.

70.   Mirenda participated in a scheme to defraud or obtain money by false representation, pretenses, or promises, causing the SBA to authorize EIDL loans intended for disaster relief for qualifying businesses, by using wire communications in violation of 18 U.S.C. § 1343.

71.   As a result of Mirenda's scheme to defraud identified herein, the SBA disbursed EIDL funds to the applicant businesses in the manner identified in Paragraphs 34-49 of this Complaint, and as further identified in Paragraphs 64-65.

72.   Therefore, the Defendant Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property constituting, or derived from, proceeds of a violation of section 1343.

### CLAIM 13
18 U.S.C. § 981(a)(l)(A)
(Money Laundering)

73.   The United States incorporates paragraphs 1-72 as though fully set forth

herein.

74.     Title 18, United States Code, Section 981(a)(l)(A) provides that "[A]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . or any property traceable to such property" is forfeitable to the United States.

75.     Title 18, United States Code, Section 1957, in turn, prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]" "[T]he term 'monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution[.]"

76.     Upon receipt of the fraudulently obtained EIDL funds into the various business accounts identified in Paragraphs 34-49 and 64-65 of this Complaint, Mirenda wired/transferred EIDL funds from each applicant business account into the WFB Sicilia Mia Management Account ending in 6755, deliberately commingling EIDL funds with non-EIDL to facilitate, disguise, and otherwise hide the nature and source of his scheme to defraud the SBA. The total sum of fraudulently obtained EIDL funds deposited into WFB Sicilia Mia Management Account ending in 6755 was $1,838,500.

77.     On or about October 8, 2020, Mirenda transferred $610,000 from WFB Sicilia Mia Management Account ending in 6755 into his personal Wells Fargo savings account ending in 4529. The funds transferred constitute proceeds gained from a "specified unlawful activity," and were transferred with deliberate intent to commingle, facilitate, disguise, and otherwise hide the nature and source of Mirenda's scheme through commingling with untainted funds.

78.     Subsequently, also on October 8, 2020, Mirenda transferred $610,204.85 from his Wells Fargo savings account ending in 4529 to a Union Heights Escrow Trust Account held at US Bank for the purchase of the West Jordan Property.

79.     Accordingly, the Defendant Property and/or the full value of the Defendant Property from any sale proceeds, including any accrued increase from tainted or untainted funds, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(S) as property "involved in" or "traceable to" a violation of 18 U.S.C. § 1957.

### CLAIM 14
18 U.S.C. § 981(a)(l)(A)
(Money Laundering)

80.     The United States incorporates paragraphs 1-79 as though fully set forth herein.

81.     Title 18, United States Code, Section 981(a)(l)(A) provides that "[A]ny

property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . or any property traceable to such property" is forfeitable to the United States.

82.    Title 18, United States Code, Section 1957, in turn, prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]" "[T]he term 'monetary transaction' means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution[.]"

83.    Upon receipt of the fraudulently obtained EIDL funds into the various business accounts identified in Paragraphs 34-49 and 64-65 of this Complaint, Mirenda wired/transferred EIDL funds from each applicant business account into the WFB Sicilia Mia Management Account ending in 6755, deliberately commingling EIDL funds with non-EIDL to facilitate, disguise, and otherwise hide the nature and source of Mirenda's scheme.

84.    On or about July 19, 2021, Mirenda entered into a Residential Purchase Agreement of $505,000 for purchase of the Paintedhills Property. The entirety of this purchase was made with funds wired from the Sicilia Mia Management Account ending in 6755.

85.     Based on forensic analysis of the Sicilia Mia Management Account ending in 6755, as more particularly described in Paragraph 59 of this Complaint, eighty-eight percent of the funds used to purchase the Paintedhills Property can be traced to EIDL funds. Those funds constitute proceeds gained from a "specified unlawful activity" in transferred in violation of section 1957.

86.     Therefore, the Defendant Property and/or the full value of the Defendant Property from any sale proceeds,, including any accrued increase from tainted or untainted funds, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) as property "involved in" or "traceable to" a violation of 18 U.S.C. § 1957.

## REQUEST FOR RELIEF

WHEREFORE, the United States respectfully asserts there is reasonable cause to believe the Defendant Property identified herein is forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(A). Accordingly, the United States respectfully requests:

A. That notice of this action be given to all persons known or thought to have an interest in or right against the Defendant Property;

B. That the Defendant Property, or any and all proceeds from the sale of either Defendant Property, be forfeited and condemned to the United States of America;

C. That the Court decree, confirm, enforce, and enter an Order of Forfeiture as to the Defendant Property, or the sale proceeds therefrom, to the United States of America; and thus, order the Federal Bureau of Investigation or other applicable federal agency, or their delegates, to dispose of the Defendant Property as provided by law; and

D. That the Court award the United States all other relief to which it is entitled, including the costs of this action and for such other and further relief as this Court deems just and proper.

Dated this 19 day of April, 2022.

ANDREA T. MARTINEZ
United States Attorney

 /s/ Mark E. Woolf
MARK E. WOOLF
Assistant United States Attorneys

## **VERIFICATION**

I am a Special Agent with the Federal Bureau of Investigation, and declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture *In Rem*, and that the facts contained therein are based upon my personal knowledge or upon information I obtained in the course of my investigation and are true and correct to the best of my knowledge and belief.

Executed on this __18__ day of April, 2022.


_____
Jack Marberger
FBI Special Agent